W. J. MOORE, Appellee, *vs.* ELLA D. MARTIN *et al.* Appellants.

*Opinion filed April 23, 1908.*

1. DEEDS—*when a deed from husband to wife should not be set aside.* A deed from husband to wife, executed in accordance with a contract whereby the wife dismissed a pending divorce suit, should not be set aside upon the ground that the wife violated the contract by instituting a second divorce suit, where the husband, though duly notified and having full knowledge of the pendency of such second suit, made no defense, and where it is not shown that the wife entered into the contract intending to mislead him.

2. EQUITY—*party who sleeps upon his rights is not entitled to relief except for fraud or mistake.* A defendant to a suit at law who sleeps upon his rights and negligently permits judgment to be entered against him without interposing any defense, is not entitled to have the judgment set aside in a court of equity upon any other grounds than fraud, accident or mistake.

3. HOMESTEAD—*a deed not signed by wife is not good as to the homestead estate.* A deed from a husband as sole grantor, conveying to his wife homestead premises which he continues to occupy,

is invalid as to the homestead estate of $1000, notwithstanding the deed purports to waive and release the homestead estate and is signed and acknowledged by the wife subsequent to its execution and delivery; but the deed is valid as to the excess in value over the $1000 homestead estate.

APPEAL from the Circuit Court of Vermilion county; the Hon. J. W. CRAIG, Judge, presiding.

WILLIAM L. CUNDIFF, for appellants.

G. W. SALMANS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed July 16, 1906, in the circuit court of Vermilion county, asking to have a certain deed dated November 3, 1902, from appellee to the appellant Ella D. Martin canceled, and to set aside a common law judgment for $5511.67, entered April 12, 1906, in the said circuit court, against appellee and in favor of said appellant Ella D. Martin. After the pleadings were settled by the filing of answers and cross-bills on behalf of appellants, the matter was referred to a master in chancery. He found that appellee was not entitled to the relief prayed for, except as to his homestead rights. Exceptions were filed to this report, and on the hearing before the court a decree was entered December 12, 1907, setting aside said deed in accordance with the prayer of the bill but holding that the common law judgment should be allowed to stand. An appeal from this decree was taken to this court.

Appellants have assigned errors as to the first part of this decree with reference to the setting aside of said deed, and appellee cross-errors as to that part relating to the common law judgment.

Appellee and said Ella D. Martin were married in 1881 and lived together as husband and wife some twenty years. They have one daughter, Lucile, now about seventeen years of age. Appellee was a physician in Danville, Illinois, ap-

233—33

parently with considerable practice and in comfortable circumstances. About 1902 trouble arose between the husband and wife in reference to a young woman with whom appellee was charged with having improper relations. In October, 1902, the wife started proceedings for divorce in the circuit court of Vermilion county, charging adultery; also to obtain a temporary injunction restraining appellee from disposing of his property. Shortly thereafter the appellee entered into negotiations with his wife with reference to settling said divorce proceedings, writing several letters on the subject. Finally, on November 3, 1902, an agreement was entered into between them, providing, substantially, that whereas there was then pending in the circuit court of Vermilion county, Illinois, a suit instituted by said wife against appellee for divorce and alimony, summons having been returned to the January term, 1903; "and whereas the parties to said suit so pending are desirous of settling said claim for alimony, and all other matters involved in said litigation, amicably and out of court," it was therefore stipulated that the appellee, by good and sufficient warranty deeds, should transfer to his wife, in fee simple, certain described real estate. "And said party of the first part, in further consideration of such settlement and agreement, doth hereby release and forever renounce, surrender and disclaim any and all right, title and interest in and to the aforementioned property, and any and all other property of the party of the second part, real, personal or mixed, and especially renounces and releases unto the party of the second part all right of dower and homestead in and to any and all property hereby covenanted to be conveyed or now owned or hereafter to be acquired by the party of the second part;" and further, that he would deliver to said second party a power of attorney fully authorizing her, as his attorney in fact, to release all claim, especially for dower and homestead, to said property. Appellee further agreed that he would pay his wife $50 on the first day of each month dur-

ing the time she should remain his wife, and that during the time he should be allowed to use a certain office building he would pay the further sum of $25 per month, the two sums to be for the support of the wife and daughter. The wife, in view of the covenants and undertakings of appellee, agreed to accept the properties so transferred and the payments so made "in full satisfaction of all her interest in and to the property, real, personal and mixed, of the party of the first part, save that herein agreed to be conveyed to her," and renounced and disclaimed all her right of dower and homestead in and to the real estate of the party of the first part which he then had or thereafter might acquire, agreeing that he should be at liberty to sell, transfer or encumber the same free from all her dower, homestead or right of inheritance, and that she would deliver to him a power of attorney authorizing him to convey her interests of every nature, especially dower and homestead, in all the property now owned or thereafter acquired by him, except the property to be conveyed, as therein set forth, to her. It was further agreed that immediately upon the execution and delivery of said contract and of the several powers of attorney said divorce suit should be stricken from the docket of the circuit court of Vermilion county. On the same day appellee gave a warranty deed conveying the property described to his wife in accordance with the agreement, the deed purporting to release and waive in the body, as well as in the acknowledgment, the right of homestead. Some time previous to this the wife, with her daughter, had moved to Chicago. She corresponded with appellee frequently and he sent letters and presents to his daughter, evincing a large degree of affection for her, often writing as to her education and future training. He also apparently kept up the monthly payments for some time after the agreement was signed.

The wife and daughter testified that the understanding between appellee and his wife was, that after the agreement

was signed and the divorce proceedings dismissed in Vermilion county and the talk had ceased in regard to their trouble, she could quietly obtain a divorce in Cook county. Appellee denied this and the agreement itself is silent on the subject. It appears from appellee's letters written previous to the signing of the agreement that he did not seriously object to the divorce, and in a letter written October 16, 1902, he stated to her that if the settlement was made as he suggested she could then "apply, if you so desire, in a quiet way for a divorce in the Chicago courts upon some ground that will not hereafter bring disgrace upon Lucile and injury to my business." On May 18, 1903, he wrote: "I am perfectly willing you should file your paper when you please, as when it is filed I will be free to deed my property when and to whom I please, without having to beg for your signature. The only reason I preferred not filing it at present was the gossip I feared might follow it."

On October 17, 1904, a bill for divorce was filed in the circuit court of Cook county, making practically the same charges as in the original bill for divorce. Appellee was duly served with summons in this case. He claimed in letters to his wife and her solicitor that the clerk or one of the deputy clerks of that court had told him he was not legally served. On December 24, 1904, the bill of complaint was amended, after notice served upon appellee. His letters show that he knew as early as March 13, 1904, that his wife was talking of filing this second suit for divorce, and after the suit was started he wrote her November 14, 1904, stating that he intended, now that the suit was started and she had violated the agreement, to have the deed to her set aside, and that he had never released his homestead right in the property. However, he did not enter his appearance or take any steps to defend in the proceedings, and on January 4, 1905, the divorce was granted, allowing $25 a month for the support of the daughter and $50 a month for the wife, and also barring appellee from claiming any right in

any property possessed by the complainant in that bill. Appellee did nothing as to this suit until the filing of the bill in the case at bar. May 30, 1906, appellant Ella D. Martin was married to appellant John H. Martin.

The decree of the circuit court in this case finds that after the execution of said contract and agreement and the transfer of said real estate to appellant Ella D. Martin, she ignored and violated said contract by applying for and obtaining said divorce for the same identical cause of action for which the suit pending in the circuit court of Vermilion county had been dismissed and by applying for and obtaining alimony, and that by her conduct she evinced a lack of intention to carry out the said contract at the time it was entered into; that it was her evident intention, under a pretense of settlement, to acquire all the rights she could by the contract and deed and then to ignore and treat the contract as of no binding force; that such action on her part was a fraud upon appellee. For this cause the court canceled the deed in question. That defense should have been made in the second divorce proceeding. We think the contract and the deed from appellee to his wife should be read together, as the deed stated that it was "executed pursuant to and in fulfillment of an agreement and post-nuptial settlement this day entered into by and between" the parties thereto.

Appellee contends that under this agreement and deed his former wife could not rightly obtain a divorce for a cause existing November 3, 1902. Conceding that this contention is correct, he should have made that defense in the divorce proceeding. He also contends that she forfeited her title to the property in the deed by the divorce. There are no specific words in the contract indicating, directly or indirectly, a forfeiture for any reason.

Appellee cites *Oard* v. *Oard,* 59 Ill. 46, and other authorities, to uphold his contention that equity will rescind a contract on the ground that the consideration has been en-

tirely withheld. But in the *Oard case* it was stated that the transaction in question was such a gross abuse of the confidence reposed by an almost imbecile father in his son as to be tainted throughout with a fraudulent intent, ripening into a wicked consummation. An examination of that case, and others of the same character, shows that the intervention of equity has been sanctioned in such cases on the theory that the neglect or refusal of a grantee to comply with his contract raised the presumption that he did not intend to comply with it in the first instance and that it was fraudulent in its inception. (*Stebbins* v. *Petty,* 209 Ill. 291.) In all these cases there was an entire failure of consideration. That is not the case here. The appellee understood the contents of the agreement. Indeed, he seems to have suggested most of the conditions himself. Viewed in the light most favorable to him, the most he could claim would be that his wife had violated her contract after its execution. There is not the slightest evidence indicating that she entered into this agreement with the intention of misleading him. If, as he contends, the obtaining of the divorce was a violation of the agreement or the breach of a condition subsequent in the deed, he cannot obtain the relief here sought in equity. (*Douglas* v. *Union Mutual Life Ins. Co.* 127 Ill. 101; *Toledo, St. Louis and New Orleans Railroad Co.* v. *Railroad Co.* 208 id. 623.) The circuit court erred in setting aside this deed.

After the separation of appellee and his wife, and until a short time after the divorce, appellee continued to transact business for her at Danville and vicinity, selling a number of lots, paying insurance and taxes, collecting rents, etc. She claims that there was considerable balance coming to her on these accounts, and there was correspondence between them, and by her solicitor, Capt. Black, on her behalf, about these matters, commencing in the early part of 1904, containing claims that he had not sent her the proper amounts of money and denials on his part, but he never

sent a full statement and did not seem inclined to give an accounting. In September, 1905, he was in Chicago on this matter and saw his former wife and attorney Black. About that time an attorney acting for her in Danville commenced the common law proceedings against appellee, charging that he had failed to account for $3300, proceeds of the sale of lots, and that he had failed to remit $450 interest and $2125 in rents, and claiming $2000 for other matters. Appellee was very angry at the starting of this suit. Whether or not there was bad faith in starting it, as he contends, is immaterial. It was finally continued by agreement of both parties, at the suggestion of attorney Black for Mrs. Moore, until the January term, in the hope that there could be a settlement out of court. Appellee apparently failed to employ an attorney to look after his interests in this suit, the same as he failed to do in the divorce proceedings. In the early part of December, 1905, he came to Chicago and saw his former wife and went with her to the office of her Chicago attorney, telling him that they had come to an agreement as to the settlement. She did not seem to do much of the talking in her attorney's office, but after Dr. Moore left she decided, on the advice of the attorney, that appellee's proposed settlement was not acceptable to her, and the attorney accordingly wrote a letter December 7, 1905, stating fully her position in the matter. Appellee replied December 9, and the attorney replied on December 21, and later sent a letter, January 11, stating upon what terms the settlement could be made, closing with the sentence, "Kindly let me hear from you at once, as this matter should be determined without further delay." Appellee never replied to these letters of the attorney, although it seems he wrote his former wife afterwards and perhaps saw her, but no definite steps appear to have been taken by him to try to settle the suit in question or to make an accounting. Not having entered his appearance or filed any plea in the suit, the local attorney in Danville took a default therein on January 17,

1906. April 12, 1906, the doctor's former wife went to
Danville, her evidence was taken and a judgment entered in
her favor in that suit for $5511.67. Appellee received no
special notice of the intention to take up this case for hear-
ing. April 17, 1906, after judgment was taken, he wrote
his wife, stating, among other things, that she had not dis-
missed that suit "as you agreed to do, but you have per-
mitted  *  *  *  Cundiff to surreptitiously take judgment
against me.  *  *  *  Nor will I allow a judgment to stand
against me. I did not answer Capt. Black's letter because
I considered it dictatorial and insulting,"—continuing with
a sharp criticism of the legal profession in general, and clos-
ing with the statement that unless she returned to him the
power of attorney he would commence suit to set aside the
deed. The January term of the circuit court of Vermilion
county, at which this judgment was obtained, adjourned for
that term April 27, 1906. He took no steps to set aside
this judgment until the beginning of this lawsuit.

We find nothing in the record to justify the claim of
appellee that this judgment was obtained through fraud. It
is very obvious that during all of this negotiation he refused
to come to any positive settlement with his wife's attorneys
and was very bitter against the attorney in Danville. His
letters indicate that at one time during the various nego-
tiations he had a physical conflict with that attorney. At-
torney Black intimated during the correspondence, before
judgment was obtained in this common law suit, that on
account of appellee's dislike for the Danville attorney set-
tlement could be made without the latter's intervention.
On this record appellee is guilty of gross negligence, both
in the common law and divorce proceedings. He wrote his
wife frequently that he could protect his interests and she
would certainly lose if she continued the suits. He should
have placed himself in such position that advantage could
not be taken of him in these cases, if, as he claims, that was
done. Instead of doing this he slept on his rights. The

law will not suffer parties to lie by until judgment has gone against them, and then permit them, on any other ground than fraud, accident or mistake, to go into equity and obtain redress. *Hopkins* v. *Medley,* 99 Ill. 509; *Cairo and St. Louis Railroad Co.* v. *Holbrook,* 92 id. 297.

Appellee also contends that his deed to his wife was void as to his homestead rights. His wife did not join with him, as grantor, in the deed to her at the time it was originally executed, though after this proceeding was started, on January 2, 1907, she signed and acknowledged the deed in question. Appellee appears to have occupied the homestead premises until the beginning of these proceedings. Under section 4 of the Exemption act (Hurd's Stat. 1905, p. 1044,) a deed by a husband alone, purporting to convey premises occupied as a homestead, is a nullity so far as it appears to convey a homestead estate not exceeding in value $1000. The wife did not render this deed valid as to the homestead by signing and acknowledging it when she did. Whether the deed would have been valid as to the homestead interest had it been executed by the wife at the time of its execution by the husband need not be here decided. The deed from the husband to the wife as to the homestead is valid and must be allowed to stand as to the excess in value over $1000, but is invalid as to that amount. *Stickel* v. *Crane,* 189 Ill. 211; *Despain* v. *Wagner,* 163 id. 598; *Anderson* v. *Smith,* 159 id. 93; *Lininger* v. *Helpenstell,* 229 id. 369.

The decree of the circuit court as to the common law judgment will be affirmed, and that part of the decree setting aside the deed of November 3, 1902, from appellee to appellant Ella D. Martin will be reversed and the cause remanded for further proceedings, including the partitioning or setting aside of the homestead rights of appellee, consistent with the views herein expressed. Each party will pay his own costs.          *Reversed in part and remanded.*